**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **PAVEL GRACHEV** ) | |
| Apt. 302 ) | |
| Phoenix Tower – Plot No. 196-DAT ) | |
| Dubai Land ) | |
| Dubai, UAE ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Civil Action No. 1:26-cv-962 |
| v. ) | |
| ) | |
| ) | |
| **MARCO RUBIO,** ) | |
| **in his official capacity as** ) | **COMPLAINT FOR** |
| **Secretary of State** ) | **DECLARATORY AND** |
| 2201 C Street, NW ) | **INJUNCTIVE RELIEF** |
| Suite #4657 ) | |
| Washington, D.C. 20037 ) | **ECF** |
| ) | |
| ) | |
| and ) | |
| ) | |
| ) | |
| **THE UNITED STATES DEPARTMENT** ) | |
| **OF STATE** ) | |
| 2201 C Street, NW ) | |
| Washington, D.C. 20037 ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

Plaintiff Pavel Grachev brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of State ("State Department") and its Secretary, Marco Rubio, and in support of this complaint alleges the following:

## NATURE OF THE CASE

1.      This lawsuit seeks the Court's intervention to enjoin Defendants from their unlawful designation of Plaintiff as a Specially Designated National and Blocked Person ("SDN") pursuant to Executive Order ("E.O.") 14024.

2.      Specifically, on May 19, 2023, Defendants designated Plaintiff pursuant to E.O. 14024 Section 1(a)(i) for being a person that operates or has operated in the metals and mining sector of the Russian Federation economy. Notice of Department of State Sanctions Actions, 88 Fed. Reg. 56,077 (Aug. 17, 2023). In taking this action, the State Department, in a conclusory manner, explained that Plaintiff is the *former* General Director of Public Joint Stock Company Polyus ("Polyus"). U.S. Dep't of State, *United States Imposes Additional Sanctions and Export Controls on Russia in Coordination with International Partners*, May 19, 2023, https://2021-2025.state.gov/united-states-imposes-additional-sanctions-and-export-controls-on-russia/ (emphasis added).

3.      The State Department was fully aware of Plaintiff's resignation when it designated him, as evidenced by a copy of the Polyus press release announcing that resignation being included in the administrative record underlying Plaintiff's designation. In its own press release, the State Department further explained that Polyus is the "largest gold producer in Russia and a global top ten gold miner by ounces produced." *Id*. Defendants, however, did not identify any conduct by Plaintiff, only stating his former status, notwithstanding that he was designated for operating or having operated in a particular economic sector, namely in the metals and mining sector of the Russian Federation economy.

4.      The authority under which Plaintiff was designated did not become effective until almost a year after Plaintiff resigned from his roles with Polyus. Indeed, Plaintiff was the former

Chief Executive Officer ("CEO") of Polyus until April 11, 2022, and a member of the company's board of directors until April 12, 2022. Defendants, however, did not have the authority to impose sanctions on persons determined to operate or have operated in the metals and mining sector of the Russian Federation economy until February 24, 2023.

5.      Indeed, on February 24, 2023, OFAC made a determination pursuant to Section 1(a)(i) of E.O. 14024 to authorize blocking sanctions under E.O. 14024 on persons or entities determined to operate or have operated in the metals and mining sector of the Russian Federation economy. That determination expressly states it "shall take effect on February 24, 2023." U.S. Dep't of the Treasury, Office of Foreign Assets Control, *Determination Pursuant To Section 1(a)(i) Of Executive Order 14024 Metals and Mining Sector of the Russian Federation Economy*, Feb. 24, 2023, https://ofac.treasury.gov/media/931336/download?inline. February 24, 2023 is therefore the date upon which the Defendants were granted authority to designate persons for "operating or having operated" in the metals and mining sector.

6.      While Plaintiff previously held a role at Polyus, he ceased his involvement with that entity nearly a year before U.S. law authorized the designation of persons for operating or having operated in the metals and mining sector of the Russian Federation economy.

7.      Defendants have not concluded that Plaintiff continued to operate in the metals and mining sector of the Russian Federation economy after February 24, 2023, either through Polyus or through other means. The Defendants did conclude, however, that Plaintiff resigned from Polyus prior to his designation insofar as the State Department press release announcing Plaintiff's designation expressly acknowledges that Plaintiff is the *former* General Director of Polyus (emphasis added). Thus, Defendants knew that Plaintiff did not have any role at Polyus at

3

the time of his designation, but sanctioned him nonetheless for operating in, or having operated in, the metals and mining sector of the Russian Federation economy.

8. Accordingly, Plaintiff turns to this Court for relief and to overturn and hold unlawful Defendants' May 19, 2023 designation, as Defendants' findings, conclusions, and actions in this matter violate the Administrative Procedure Act ("APA").

## JURISDICTION AND VENUE

9. This action arises under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*., and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

10. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

11. Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and (e), as the Defendants reside in this District.

## THE PARTIES

12. Plaintiff is and was at all relevant times a citizen of Russia residing in Dubai, United Arab Emirates ("UAE").

13. Plaintiff served as the CEO of Polyus from October 2, 2014 to April 11, 2022, and on the company's board of directors from May 26, 2009 to December 9, 2011, and from May 27, 2014 to April 12, 2022.

4

14. On May 19, 2023, Plaintiff was designated as an SDN under E.O. 14024, and his name was added to the Specially Designated Nationals and Blocked Persons List ("SDN List") maintained and administered by OFAC.

15. Defendant the State Department is a department of the United States federal government that manages the United States' relationships with foreign states and international organizations and is responsible for designating Plaintiff pursuant to E.O. 14024. The State Department is located at 2201 C Street, NW, Washington, D.C. 20037.

16. Defendant Marco Rubio is the Secretary of the United States Department of State and is authorized to impose sanctions under E.O. 14024 Section 1(a)(i). Mr. Rubio is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A.    Procedural Background

17. Issued pursuant to IEEPA, E.O. 14024 authorizes the Secretary of State to designate and impose blocking sanctions on persons determined to "operate or have operated in the technology sector or the defense and related materiel sector of the Russian Federation economy, or any other sector of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State." Exec. Order No. 14024 § 1(a)(i).

18. On February 24, 2023, OFAC issued a Determination Pursuant to Section 1(a)(i) of E.O. 14024 authorizing blocking sanctions to be imposed on persons or entities that operate or have operated in the metals and mining sector of the Russian Federation economy. U.S. Dep't of the Treasury, Office of Foreign Assets Control, *Determination Pursuant To Section 1(a)(i) Of Executive Order 14024 Metals and Mining Sector of the Russian Federation Economy*. Notably,

the determination states that it shall take effect on February 24, 2023. *Id.*

19.     On February 24, 2023, OFAC issued Frequently Asked Question ("FAQ") #1116, which states that a sectoral determination "does not automatically impose sanctions on all persons who operate or have operated in the sector. Only persons *determined* pursuant to E.O. 14024 to operate or have operated in the above-identified sector are subject to sanctions." Off. of Foreign Assets Control, U.S. Dep't of the Treasury, *Frequently Asked Question 1116*, Feb. 24, 2023, https://ofac.treasury.gov/faqs/1116. (emphasis added).

20.     On May 19, 2023, the State Department designated Polyus under Section 1(a)(i) of E.O. 14024 for being an entity that operates or has operated in the metals and mining sector of the Russian Federation economy. 88 Fed. Reg. 56,090; U.S. Dep't of State, *United States Imposes Additional Sanctions and Export Controls on Russia in Coordination with International Partners*.

21.     In addition to designating Polyus, Defendants also designated Plaintiff under E.O. 14024 Section 1(a)(i) for being a person that operates or has operated in the metals and mining sector of the Russian Federation economy. 88 Fed. Reg. 56,077; U.S. Dep't of State, *United States Imposes Additional Sanctions and Export Controls on Russia in Coordination with International Partners*.

22.     In the May 19, 2023 press release announcing Plaintiff's designation, the State Department stated that Plaintiff is the "former General Director of Polyus," Russia's largest gold producer. U.S. Dep't of State, *United States Imposes Additional Sanctions and Export Controls on Russia in Coordination with International Partners*. The press release does not identify any conduct by Plaintiff; solely his status as the former General Director of Polyus.

6

23.    On August 17, 2023, the Federal Register was updated to reflect Plaintiff's designation under Executive Order 14024. 88 Fed. Reg. 56,077. That designation was a final agency action insofar as it marked the consummation of the agency's decision making process as to Plaintiff's status, was not tentative or interlocutory, and imposed immediate and binding legal consequences. As a direct result, Plaintiff was subjected to blocking-related restrictions and other legal disabilities attendant to SDN status, including prohibitions affecting dealings involving Plaintiff and his property or interests in property subject to U.S. jurisdiction.

24.    On September 1, 2025, pursuant to the State Department's public guidance for persons seeking rescission of their sanctions designation, Plaintiff submitted a request for a courtesy document identifying unclassified information underlying his E.O. 14024 designation. U.S. Dep't of State, *Learn More About the Department of State's Delisting Process*, https://www.state.gov/sanctions-delisting#:~:text=To%20request%20removal%20from%20the,to%20assign%20a%20case%20number.).

25.    On September 15, 2025, the State Department provided Plaintiff the courtesy document—a list of exhibits contained in the administrative record compiled in support of Defendants' determination that Petitioner operates in the metals and mining sector of the Russian Federation economy. This list of exhibits itself was unclassified, as were all exhibits identified in the list which were relied upon for Petitioner's designation.

26.    A review of the exhibits in that courtesy document confirms that Defendants' administrative record compiled in support of Plaintiff's designation contained evidence that Plaintiff resigned from his positions at Polyus in April 2022—almost a year before the legal criteria under which he was designated came into effect. For example, the courtesy document

includes a publicly available press release issued by Polyus which states that Plaintiff resigned as CEO of Polyus on April 11, 2022, and from the company's board of directors on April 12, 2022. Polyus, *Personnel changes in the company's management*, Apr. 11, 2022, https://polyus.com/ru/media/press-releases/kadrovye-izmeneniya-v-rukovodstve-kompanii/. Thus, at the time they designated him, Defendants were aware of Plaintiff's resignation and separation from Polyus, and that such separation occurred before February 24, 2023.

### B. The Procedures Governing Delisting from the SDN List

27. Defendant State Department provides that persons seeking reconsideration of their designation must establish that delisting is appropriate, consistent with OFAC's regulations found in 31 C.F.R. Section 501.807. U.S. Dep't of State, *Learn More About the Department of State's Delisting Process*.

28. OFAC has promulgated regulations and procedures by which persons identified on the SDN List may seek their removal from the SDN List. 31 C.F.R. § 501.807. Those procedures allow a sanctioned party to: (i) request reconsideration due to an insufficient legal or factual basis for the designation; (ii) assert that the circumstances resulting in the designation no longer apply; or (iii) propose remedial measures intended to negate the basis of the designation. *Id.*

29. Neither IEEPA nor 31 C.F.R. § 501.807 express that such administrative remedies must be pursued prior to seeking judicial review of a final agency action leading to a sanctions designation and identification on the OFAC SDN List. Further, although the government may maintain procedures by which a designated person may request administrative reconsideration or delisting, those procedures are permissive and remedial, not mandatory prerequisites to judicial review.

30.    In addition, Defendant State Department has provided guidance concerning removal from the SDN List. U.S. Dep't of State, *Learn More About the Department of State's Delisting Process*. This guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. The guidance also offers examples of situations in which delisting might be warranted, including "a positive change in behavior" or when the "basis for the designation no longer exists." *Id*.

31.    Notably, the administrative delisting framework available to seek reconsideration of a sanctions designation does not fit the circumstances of this case because the State Department has already acknowledged that Plaintiff resigned from the role that led to his designation. Moreover, Defendants have not alleged that Plaintiff is continuing to operate in the metals and mining sector of the Russian Federation economy, nor that the conduct for which he was designated occurred in the past tense, but rather *after* the designation criteria came into effect. Indeed, the exhibits in the courtesy document Defendants disclosed to Plaintiff also do not contain any information demonstrating that Plaintiff operated in the metals and mining sector of the Russian Federation economy following his resignation from Polyus in April 2022.

### C.    Harm to Plaintiff

32.    As a result of his designation, all of Plaintiff's property and interests in property in the United States, that come within the United States, or that come within the possession or control of any U.S. person, are blocked. This blocked property cannot be transferred, paid, exported, withdrawn, or otherwise dealt in. As a result, U.S. persons are generally prohibited from virtually all dealings with persons blocked under E.O. 14024.

33.    Moreover, Plaintiff has been unable to pursue any employment opportunities where he resides due to reputational concerns and sanctions-related risks associated with

interactions with Plaintiff, as well as his inability—due to SDN status—to move capital and interact with local authorities or secure the cooperation of local partners. Plaintiff has also been completely isolated from any international contacts, both business and personal ones, due to his sanctions designation. Indeed, financial institutions, business partners and potential employers, industry associations, social groups, and even personal friends with international exposure have stayed away from interacting with Plaintiff.

34.     Further, all of Plaintiff's accounts with banks and brokers outside of Russia were either closed or frozen, and most of the assets deposited in those accounts were blocked. With no active bank account or credit card outside of Russia, Plaintiff has no access to any online and most offline services—*e.g.*, he lost all subscriptions to investment databases, financial analytics, etc.—and has difficulties making even basic purchases in the UAE.

35.     Additionally, Plaintiff's ability to travel is precluded not only to the United States but also to other countries, as Plaintiff lacks the ability to use a credit card and therefore cannot book a hotel, rent a car, or purchase an airline ticket. His access to paid medical services in the UAE is also restricted, he no longer has international health insurance coverage, and can no longer provide for medical assistance for his aging parents.

## LEGAL CLAIMS

36.     Plaintiff brings this action under both the APA and the Court's nonstatutory equitable authority to review unlawful executive action. Under 5 U.S.C. § 706(2)(C), agency action must be set aside if it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Separately, even apart from the APA, federal courts may grant equitable relief against officers who act *ultra vires*—that is, beyond the authority delegated to them by law. Plaintiff pleads these as distinct theories of review.

**COUNT I**

DEFENDANTS' DECISION TO DESIGNATE PLAINTIFF UNDER E.O. 14024
CONSTITUTES AGENCY ACTION THAT IS IN EXCESS OF STATUTORY
JURISDICTION, AUTHORITY, OR LIMITATIONS, OR SHORT OF STATUTORY RIGHT

37.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

38.     Defendants' designation of Plaintiff was unlawful because it exceeded the authority conferred by E.O. 14024 and any other applicable source of delegated sanctioning authority. Under the APA, this Court must hold unlawful and set aside agency action found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Because Defendants applied E.O. 14024 beyond the scope authorized by law, the designation must be vacated under 5 U.S.C. § 706(2)(C).

39.     Under the APA, a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2)(C).

40.     E.O. 14024 authorizes the Secretary of State to designate and impose blocking sanctions on persons determined to "operate or have operated in the technology sector or the defense and related materiel sector of the Russian Federation economy, or any other sector of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State." Exec. Order No. 14024 § 1(a)(i).

41.     On February 24, 2023, OFAC issued a Determination Pursuant to Section 1(a)(i) of E.O. 14024 authorizing blocking sanctions to be imposed on persons that operate or have operated in the metals and mining sector of the Russian Federation economy.

11

42. Courts apply traditional rules of statutory interpretation to determine whether an agency has acted in excess of its statutory authority. A fundamental rule of statutory interpretation is that statutes do not apply retroactively unless Congress clearly intended them to do so. This principle reflects a basic principle of fairness that individuals are entitled to notice of what the law requires before being held accountable under it.

43. Further, "retroactivity is not favored in the law" and agencies lack authority to promulgate retroactive rules absent "an express statutory grant." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Moreover, in construing the scope of the designation authority conferred by E.O. 14024, this Court must exercise its own independent judgment rather than defer to the agency's interpretation. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Notably, IEEPA contains no express grant permitting the imposition of blocking sanctions based on conduct that concluded before the relevant sectoral determination took effect.

44. E.O. 14024 Section 1(a)(i) authorizes the designation of persons who "operate or have operated" in determined sectors. The phrase "operated" must be read in conjunction with the sectoral determination's effective date—the date on which the designation authority first came into existence. A person who ceased operating before the determination took effect has not "operated" in a sanctionable sector at any relevant time. The canon against statutory retroactivity recognized in *Landgraf v. USI Film Products*, 511 U.S. 244, 270 (1994), instructs that statutes and regulatory instruments are presumed to attach legal consequences only to conduct occurring after their effective date, absent clear contrary intent. *Bowen*, 488 U.S. 204, 208 (agencies lack authority to impose retroactive obligations absent express congressional authorization). Neither IEEPA nor E.O. 14024 contains any such express authorization to reach conduct that antedated the sectoral determination. Moreover, any contrary reading would produce an absurd result:

12

under an untethered temporal interpretation, any person who at any point in their lifetime worked in metals and mining—regardless of when, or whether the sector was then subject to any U.S. sanctions authority—could be designated. Nothing in the text of E.O. 14024 or the February 24, 2023 determination supports that result.

45.    Moreover, OFAC's own definition of "operating" in the metals and mining sector requires affirmative conduct—"any act, process, or industry of extracting . . . ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation." Off. of Foreign Assets Control, U.S. Dep't of the Treasury, *Frequently Asked Question 1115*, Feb. 24, 2023, https://ofac.treasury.gov/faqs/1115. Defendants exceeded their statutory authority by designating Plaintiff based on his former corporate title—a status—rather than any determination that he personally engaged in the activities identified above.

46.    IEEPA authorizes the designation of persons who "operate or have operated" in the metals and mining sector of the Russian Federation economy. Defendants, however, have made no finding that Plaintiff engaged in any operational conduct falling within the sectoral definition for operating or having operated in the metals and mining sector of the Russian Federation economy. Accordingly, Plaintiff's designation for operating or having operated in the metals or mining sector of the Russian Federation economy exceeds Defendants' authority.

47.    Accordingly, Defendants exceeded their statutory authority by designating Plaintiff based on conduct or status that they have evidence ended before the effective date of the metals and mining sector of the Russian Federation economy determination.

**COUNT II**

DEFENDANTS' DECISION TO DESIGNATE PLAINTIFF KNOWING HE NO LONGER MET THE DESIGNATION CRITERIA CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION

48.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

49.    The designation of Plaintiff under E.O. 14024 was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Defendants failed to articulate a rational connection between the facts found and the decision made, failed to address important aspects of Plaintiff's circumstances, relied on considerations not permitted by the governing standard, and failed to provide a reasoned explanation for designating Plaintiff.

50.    Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

51.    The State Department instructs persons seeking reconsideration of their designation to establish that delisting is appropriate, consistent with OFAC's regulations set forth in 31 C.F.R. § 501.807.

52.    Pursuant to OFAC's regulations found in 31 C.F.R. § 501.807, a designated person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" or "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a). Designated persons may also argue that there has been a change in circumstances nullifying the reasons for their designation. 31 C.F.R. § 501.807.

53.     Agency action is arbitrary and capricious when the agency "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Manufacturers Association v. State Farm*, 463 U.S. 29, 43 (1983). Here, the State Department's press release identifies Plaintiff as the "former" General Director of Polyus. Defendants therefore designated Plaintiff despite knowledge that he no longer held any role at Polyus, and without any other conclusion or finding that he operates or has operated in the metals and mining sector of the Russian Federation economy.

### A.     Failure to Address Plaintiff's Resignation and Other Material Facts

54.     Defendants have failed to articulate any rational connection between the facts before them—Plaintiff's resignation from Polyus in April 2022—and the decision to designate him for "operating or having operated" in the metals and mining sector under an authority that did not exist until February 2023. The failure to provide a reasoned explanation renders the designation arbitrary and capricious insofar as Defendants publicly acknowledge that Plaintiff resigned nearly a year before the sectoral determination that purportedly permitted his designation. As such, Defendants sanctioned Plaintiff for operating or having operated in a sector of the Russian economy based solely on conduct that occurred and abated before that sector was subject to U.S. sanctions. Indeed, at no point have Defendants alleged that Plaintiff operated in the metals and mining sector at any time while it was sanctionable to do so.

### B.     Lack of Fair Notice and Impermissible Retroactive Application

55.     The irrationality of Defendants' designation is further confirmed by the well-established administrative law principle that an agency acts arbitrarily when it penalizes conduct that gave no fair warning of its prohibited character at the time it was performed. *See Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995) (agency may not impose a penalty for

conduct predating adequate notice of the applicable regulatory standard); *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (regulated parties must receive fair notice of what conduct may subject them to sanction "at the time the conduct occurs"); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158–59 (2012) (agency interpretations imposing liability for conduct undertaken before the interpretation was announced are disfavored).

56. At all times during which Plaintiff held any role at Polyus, the metals and mining sector of the Russian Federation economy had not been designated as a sanctionable sector under E.O. 14024 or any other U.S. law. Plaintiff therefore had no notice—and could have had no notice—that his prior role at Polyus would serve as the predicate for a blocking designation, as authority to make such designation did not come into existence until February 24, 2023, nearly a year after Plaintiff had already resigned. An agency acts irrationally and arbitrarily when it sanctions a person for conduct that bore no legal consequence at the time of its occurrence and as to which the person had no opportunity to seek guidance, modify their behavior, or conform their conduct to a standard not yet in existence.

C.     *Failure to Identify Qualifying Conduct*

57. Further, Defendants' determination that Plaintiff met the criteria for designation for operating or having operated in the metals and mining sector of the Russian Federation economy is conclusory insofar as it does not identify any conduct by Plaintiff to demonstrate that he "operates" or has "operated" in the metals and mining sector of the Russian Federation economy. Rather, Defendants merely identify Plaintiff's status as a former employee of an entity that it determined was operating in the metals and mining sector of the Russian Federation economy while failing to identify or explain any conduct by Petitioner that evidences that he operates or operated in that sector.

16

58.    Moreover, OFAC's own regulatory guidance demonstrates that "operating" in the metals and mining sector requires conduct, not mere corporate affiliation. OFAC FAQ #1115 defines the "metals and mining sector of the Russian Federation economy" to include "any act, process, or industry of extracting, at the surface or underground, ores, coal, precious stones, or any other minerals or geological materials in the Russian Federation, or any act of procuring, processing, manufacturing, or refining such geological materials, or transporting them to, from, or within the Russian Federation." Off. of Foreign Assets Control, *U.S. Dep't of the Treasury, Frequently Asked Question 1115*. This definition is activity-based, describing conduct such as "extracting," "procuring," "processing," "manufacturing," "refining," and "transporting." These verbs of action denote physical or commercial participation in mining operations. Holding a corporate title is not equivalent to operating with respect to such activities.

D.    *Unexplained Reliance on Status Rather Than Qualifying Conduct*

59.    Under traditional principles of agency, a corporate officer is not personally liable for the acts of the corporation simply by virtue of holding an official position. *See Meyer v. Holley*, 537 U.S. 280, 286 (2003) (holding that "it is the corporation, not its owner or officer, who is the principal or employer subject to vicarious liability for the torts of its employees or agents"); *see also Holy Land Foundation for Relief and Development v. Ashcroft,* 333 F.3d 156 (D.C. Cir. 2003) (individual liability requires personal involvement). This principle applies with equal force in the sanctions context: holding a corporate title at an entity that operates in a sanctionable sector is not equivalent to personally "operating" in that sector.

60.    Defendants identified only Plaintiff's status as the former General Director of Polyus; they did not allege that Plaintiff personally engaged in any of the activities—extracting, procuring, processing, manufacturing, refining, or transporting minerals—that OFAC defines as

17

constituting the metals and mining sector. See Off. of Foreign Assets Control, U.S. Dep't of the Treasury, Frequently Asked Question 1115. Plaintiff's designation thus conflates corporate status with personal conduct, rendering it arbitrary and capricious.

61.    An agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Association v. State Farm*, 463 U.S. 29. The designation criteria under which Plaintiff was designated requires conduct—i.e., that he operates or has operated—but Defendants identified only his *former* status as General Director of Polyus. Thus, there is no rational connection between the factual finding that Plaintiff held a title at Polyus and Defendants' conclusion that he operates or has operated in the metals and mining sector of the Russian Federation economy. Accordingly, Defendants' determination to sanction Plaintiff was conclusory and, as such, arbitrary and capricious. *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004) ("[The Court] do[es] not defer to the agency's conclusory or unsupported suppositions.")

## COUNT III

### DEFENDANTS' DESIGNATION OF PLAINTIFF CONSTITUTES *ULTRA VIRES* AGENCY ACTION BECAUSE THE AUTHORITY TO DESIGNATE PLAINTIFF DID NOT EXIST WHEN HIS RELEVANT STATUS CEASED

62.    Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

63.    Plaintiff alleges, in the alternative, that the challenged designation is reviewable both under 5 U.S.C. § 706(2)(C) and under the Court's nonstatutory equitable authority to restrain *ultra vires* official action. The APA claim asserts that the designation must be set aside because it exceeded the legal authority conferred on Defendants. The *ultra vires* claim separately

asserts that Defendants acted beyond their delegated power and are therefore subject to declaratory and injunctive relief even apart from the APA.

64.     Agency action that exceeds the bounds of delegated statutory authority is *ultra vires* and must be set aside. *See Bowen.*, 488 U.S. 204, 208 ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress."); *Van Loon v. Dep't of Treasury*, 97 F.4th 919, 932 (5th Cir. 2024) (holding OFAC "overstepped its congressionally defined authority" under IEEPA).

65.     IEEPA does not expressly nor implicitly authorize the retroactive application of blocking sanctions to persons whose alleged activities ended before the designation criteria of an IEEPA-based executive order came into effect.

66.     As noted above, E.O. 14024 authorizes the Secretary of State to designate and impose blocking sanctions on persons determined to "operate or have operated in the technology sector or the defense and related materiel sector of the Russian Federation economy, or any other sector of the Russian Federation economy as may be determined by the Secretary of the Treasury, in consultation with the Secretary of State." Exec. Order No. 14024 § 1(a)(i).

67.     On February 24, 2023, OFAC issued a Determination Pursuant to Section 1(a)(i) of E.O. 14024 authorizing blocking sanctions to be imposed on persons that operate or have operated in the metals and mining sector of the Russian Federation economy.

68.     Prior to February 24, 2023, no legal authority existed to designate any person for operating or having operated in the metals and mining sector of the Russian Federation economy. Accordingly, the metals and mining sector determination's effective date constitutes a temporal boundary on the exercise of the delegated authority. As such, the effective date is a judicially discoverable and manageable standard by which to assess whether Defendants acted within their

statutory bounds. *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564 (D.C. Cir. 2022).

69.     Defendants' designation of Plaintiff for operating or having operated in the metals and mining sector of the Russian Federation economy, based on either conduct or a status that concluded before the authority to make such designations took effect, constitutes action in excess of Defendants' delegated powers. *Leedom v. Kyne*, 358 U.S. 184, 188 (1958). Accordingly, Defendants' designation of Plaintiff is *ultra vires* and should be set aside.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare unlawful and set aside any agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, and set aside those actions, findings, or conclusions;

B.     Declare unlawful and set aside any agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and set aside those actions, findings, and/or conclusions;

C.     Declare Defendants' designation of Plaintiff under E.O. 14024 to be *ultra vires* and in excess of Defendants' delegated statutory authority;

D.     Remand to Defendants for reconsideration, consistent with the Court's instructions, Plaintiff's designation under E.O. 14024;

E.     Grant an award to Plaintiff of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

F.     Grant such other and further relief as the Court may deem just and proper.

Dated: March 19, 2026

Respectfully submitted,

*/s/ Erich C. Ferrari*
Erich C. Ferrari, Esq.
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Counsel for Plaintiff*